# IN THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MUSEUM OF MODERN ART, | |
| Plaintiff, | |
| v. | Case No.   1:18-cv-03364-LLS |
| MOMACHA IP LLC and MOMACHA OP LLC, | |
| Defendants. | |

## REPLY IN SUPPORT OF
## PLAINTIFF THE MUSEUM OF MODERN ART'S MOTION FOR
## PRELIMINARY INJUNCTION

MORRISON & FOERSTER LLP

Jamie A. Levitt
250 West 55th Street
New York, New York  10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: JLevitt@mofo.com

Jennifer Lee Taylor (*pro hac vice*)
Sabrina A. Larson (*pro hac vice*)
425 Market Street
San Francisco, California  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
Email: JTaylor@mofo.com
          SLarson@mofo.com

Attorneys for Plaintiff
THE MUSEUM OF MODERN ART

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    MOMA IS LIKELY TO SUCCEED ON THE MERITS OF ITS
CLAIMS .................................................................................................1

    A.    MoMaCha Has Not Overcome MoMA's Strong Showing
of Likelihood of Success on Its Trademark Infringement
Claims. ..................................................................................1

        1.    MoMaCha Does Not Dispute that MoMA Has
Prior, Valid Protectable Rights in the MoMA
Marks. ..........................................................................1

        2.    MoMaCha Does Not Dispute That Its Adoption of
Identical and Strongly Similar Marks Is Presumed
to Cause Confusion. .........................................................3

        3.    The *Polaroid* Factors Demonstrate a Likelihood of
Confusion. ......................................................................3

            a.    MoMaCha does not dispute that the MoMA
and MoMaCha word marks are identical. ................5

            b.    MoMaCha ignores the evidence that the
services are closely related. ...................................7

            c.    MoMaCha's analysis of the strength of
MoMA's marks is flawed, and MoMA's
marks are strong. ................................................7

            d.    MoMaCha does not dispute that actual
confusion between the parties' marks has
occurred. ............................................................9

            e.    MoMaCha adopted the MOMACHA
Infringing Marks in bad faith. ..............................10

            f.    MoMaCha ignores facts in claiming that the
relevant consumers are sophisticated. ...................11

    B.    MoMaCha's Failure to Rebut Evidence of Actual
Confusion and Bad Faith Adoption of Identical Marks
Concedes MoMA's Unfair Competition Claim. ......................12

    C.    MoMA Has Established the Fame of Its Marks and
MoMaCha Does Not Dispute the Remaining Elements of
MoMA's Trademark Dilution Claim. ....................................13

II.    MOMACHA FAILS TO REBUT THE IRREPARABLE
HARM MOMA WILL SUFFER IF MOMACHA IS NOT
ENJOINED ............................................................................14

III.    MOMACHA HAS NOT SHOWN THAT THE BALANCE OF
HARDSHIPS TIPS IN ITS FAVOR ...............................................15

CONCLUSION .............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Z-Eleven Convenience Store Inc.*,
  No. 16-CV-4116-RRM-SJB, 2018 WL 1521859
  (E.D.N.Y. Jan. 17, 2018) ....................................................................4

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013).........................................................................3, 4

*Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc.*,
  253 F.2d 431 (C.C.P.A. 1958) ...........................................................6

*BIC Corp. v. Far E. Source Corp.*,
  No. 99 CIV. 11385 HB, 2000 WL 1855116
  (S.D.N.Y. Dec. 19, 2000), *aff'd*, 23 F. App'x 36 (2d Cir. 2001) .......5

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ............................................................2

*Bulman v. 2BKCO, Inc.*,
  882 F. Supp. 2d 551 (S.D.N.Y. 2012) .........................................10, 14

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*,
  832 F.2d 1311 (2d Cir. 1987) .............................................................5

*Katz v. Modiri*,
  283 F. Supp. 2d 883 (S.D.N.Y. 2003) ................................................9

*La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*,
  495 F.2d 1265 (2d Cir. 1974) .............................................................3

*Lon Tai Shing Co. v. Koch + Lowy*,
  No. 90 CIV. 4464(DNE),
  1991 WL 170734 (S.D.N.Y. June 20, 1991) ...................................4, 5

*Marks Org., Inc. v. Joles*,
  784 F. Supp. 2d 322 (S.D.N.Y. 2011) ..............................................14

*Metlife, Inc. v. Metro. Nat'l Bank*,
   388 F. Supp. 2d 223 (S.D.N.Y. 2005) ................................................................13

*New York City Triathlon LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...................................................................7

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
   451 F.2d 1190 (2d Cir. 1971) ..............................................................................12

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir. 2009), *aff'd*, 736 F.3d 198 (2d Cir. 2013)..........................7

*The Sports Authority, Inc. v. Prime Hospitality Corp.*,
   89 F.3d 955 (2d Cir. 1996) ..............................................................................6, 7

*Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*,
   964 F. Supp. 733 (S.D.N.Y. 1997) ............................................................... 9 fn. 5

*V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc.*,
   No. 05CIV4429, RMB/RLE,
   2005 WL 3272828 (S.D.N.Y. Nov. 28, 2005)......................................................8

*Vox Amplification, Ltd. v. Meussdorffer*,
   CV 13-4922, 2014 U.S. Dist. LEXIS 21577
   (E.D.N.Y. Feb. 11, 2014).....................................................................................11

**Statutes**

15 U.S.C.
   § 1064.....................................................................................................................7
   § 1065.....................................................................................................................7
   § 1115(b).................................................................................................................2
   § 1125(c)(2)(A)......................................................................................................13

## INTRODUCTION

Having intentionally copied MoMA's logo—even filing an application for the ***identical*** MOMA mark—and having opened up a café that displays and sells modern art less than half a mile from the MoMA Design Store in Soho, Defendants now accuse ***MoMA*** of taking advantage of ***Defendants***.  This is an absurd argument.  MoMA filed its complaint and this motion for preliminary injunction because Defendants have intentionally taken advantage of MoMA's well-established reputation and goodwill, as represented by the famous MoMA Marks, to launch their new café and modern art gallery.  If Defendants are harmed by an injunction, they have only themselves to blame.

Further, nothing in Defendants' opposition detracts from the basic facts: MoMA has registered and owns the famous and strong MoMA Marks for museum and café services; Defendants acted intentionally in adopting marks ***identical*** to MoMA's; Defendants offer services that are closely related to and even compete with MoMA's services; and consumers and others have been and are likely to continue to be confused and mistakenly believe that MoMaCha is affiliated with MoMA.  In response, MoMaCha focuses on minor changes it made to the MoMaCha mark and disclaimers that it added to its café since MoMA filed its complaint. But these changes are too little and too late as consumers continue to believe, mistakenly, that there is an association between MoMaCha and MoMA.  A preliminary injunction should issue.

## ARGUMENT

## I.      MOMA IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.  MoMaCha Has Not Overcome MoMA's Strong Showing of Likelihood of Success on Its Trademark Infringement Claims.

1.  <u>MoMaCha Does Not Dispute that MoMA Has Prior, Valid Protectable Rights in the MoMA Marks.</u>

MoMaCha does not dispute that MoMA has valid prior rights in the MoMA Marks or

that its registrations for a wide variety of retail store services and museum-related goods and services are incontestable.  (ECF No. 8 ("Mot.") at 4; ECF No. 10 ¶¶ 3-8.)  Instead, it focuses on narrow definitions of what MoMaCha does—"sale of artwork" and "preparation of beverages"—and claims that these services fall outside MoMA's trademark rights.  (ECF No. 18 ("Opp.") at 12.)  MoMaCha is wrong.[1]

First, MoMA's registrations for retail store services include sale of a wide variety of products, including "artwork reproductions, stationery, books, publications, desk accessories, house wares, household goods, umbrellas, gifts, toys, cd's, travel accessories, clothing and other general merchandise."  (Mot. at 4; ECF No. 10 ¶¶ 3-8.)  These registrations grant MoMA the right to stop others from using identical and confusingly similar marks in the same fields.  *See* 15 U.S.C. § 1115(b) ("registration shall be conclusive evidence . . . of the registrant's exclusive right to use the registered mark in commerce"); *see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks ***in the same industry and market or within the senior user's natural zone of expansion***.") (emphasis added).  Although Defendants claim that the parties' services are not identical because MoMA sells ***reproductions*** of artwork while Defendants sell ***original*** artwork, this is a distinction without a difference, for both parties operate within the field of modern and contemporary art.  This is sufficient to establish that MoMaCha is infringing the MoMA marks through its operation of a café featuring and selling art.  *Id.*

Second, MoMA has common law rights in the MoMA Marks for café services, which

---

[1] Conversely, MoMaCha repeatedly alleges that it "ha[s] a trademark in the 'beverages' category."  (Opp. at 12.)  It does not.  It has a pending trademark application, which MoMA has opposed.  (ECF Nos. 10-7, 10-8.)

include preparation of beverages.  As shown in the evidence MoMA submitted with its motion,

MoMA has offered restaurant and café services in its Museum, under the MoMA Marks, since as

early as 1993.  (Mot. at 5.)  MoMaCha's repeated assertions that MoMA "does not actually

prepare beverages" (Opp. at 4) entirely ignores this evidence.  In fact, MoMA's dining guide,

which was submitted with its motion and prominently features the MoMA mark, includes a

picture of an iced coffee and a cappuccino, and states that MoMA's Terrace 5 café offers coffee

drinks.  (ECF No. 9-7.)  Defendants cannot seriously dispute that MoMA has common law rights

for café services, including the preparation of beverages.  *See La Societe Anonyme des Parfums*

*Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974).

> 2.  <u>MoMaCha Does Not Dispute That Its Adoption of Identical and Strongly
> Similar Marks Is Presumed to Cause Confusion.</u>

MoMaCha does not dispute that where, as here, a defendant adopts strongly similar

marks, a likelihood of confusion is presumed as a matter of law.  (Mot. at 10 (citing *Louis*

*Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 497 (S.D.N.Y. 2015);

*GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 297 (S.D.N.Y. 2002)).)  Instead,

MoMaCha argues that its recently modified marks are not similar to the MoMA Marks.  (Opp. at

7.)  In fact, they are.  As discussed below, *infra* Section I.A.3.a, the MOMACHA Infringing

Marks, in all iterations, are virtually identical to the MoMA Marks.  The case law is clear that

likelihood of confusion is therefore presumed.

> 3.  <u>The *Polaroid* Factors Demonstrate a Likelihood of Confusion.</u>

MoMaCha's claim that recent changes to its marks resolve the issue of confusion—and

that MoMA must now focus on MoMaCha's new presentation of its marks (Opp. at 13-14)—has

been rejected by the U.S. Supreme Court and the Second Circuit.  "[A] defendant cannot

automatically moot a case simply by ending its unlawful conduct once sued."  *Already, LLC v.*

*Nike, Inc.*, 568 U.S. 85, 91 (2013).  "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.*  "[W]here defendant willfully infringes, unless defendant totally and irrefutably demonstrates reform, an injunction is appropriate."  *7-Eleven, Inc. v. Z-Eleven Convenience Store Inc.*, No. 16-CV-4116-RRM-SJB, 2018 WL 1521859, at *10 (E.D.N.Y. Jan. 17, 2018) (citing *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986)).

MoMaCha's purported changes are neither "total[]" nor "irrefutabl[e]."  MoMaCha still serves customers with cups bearing its original logo—and admits that it will continue to do so for at least another two months (Opp. at 13)—and MoMaCha continues to post images with its original logo on social media, including as recently as May 10 (Reply Declaration of Jamie A. Levitt ("Levitt Reply Decl.") ¶ 3, Ex. A), despite repeatedly claiming it has changed its marks.

> [P]romises of future actions cannot by themselves justify a refusal to grant any injunctive relief.  As the Supreme Court has long noted, a bare promise by a party in the course of litigation to discontinue past or ongoing misconduct does not justify denial of injunctive relief, since such unilateral action hardly suffices to ensure that the party will not, in the future, reverse course and resume its challenged activities.

*Lon Tai Shing Co. v. Koch + Lowy*, No. 90 CIV. 4464(DNE), 1991 WL 170734, at *38 (S.D.N.Y. June 20, 1991) (citing *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974), *Gray v. Sanders*, 372 U.S. 368, 376 (1963), *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

MoMaCha also touts its newly minted "disclaimers" as rendering confusion implausible, without any evidence that such disclaimers actually work to prevent potential confusion.  (Opp. at 9-11.)  As an initial matter, it is well established in this Circuit that "[a] party that seeks to use disclaimers to avoid broader relief must demonstrate the effectiveness of the proposed disclaimers" and that burden is a heavy one.  *Lon Tai Shing*, 1991 WL 170734, at *39 (citing

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1315-16 (2d Cir.

1987)).  MoMaCha has not met that burden.  Although it provides a list of locations for the new

disclaimers (Opp. at 13-14), MoMaCha "fail[s] to make the slightest effort to demonstrate the

likely efficacy of the proposed notices."  *Lon Tai Shing*, 1991 WL 170734, at \*39.

Finally, MoMaCha also ignores the guidance of the Second Circuit that "brief negator

words such as 'no' or 'not,' are generally ineffective."  *Home Box Office*, 832 F.2d at 1316.

Indeed, a disclaimer such as MoMaCha's with only the brief negator word "no" (Opp. at 9-11)

may in fact serve to ***exacerbate*** consumer confusion, repeatedly calling MoMA to mind at every

stage of interaction with MoMaCha's services.  *See, e.g.*, *BIC Corp. v. Far E. Source Corp.*, No.

99 CIV. 11385 HB, 2000 WL 1855116, at \*6 (S.D.N.Y. Dec. 19, 2000), *aff'd*, 23 F. App'x 36

(2d Cir. 2001) ("Considering the fact that consumers make these purchases quickly . . . and that

the disclaimer uses only a 'not' to distinguish the brands, it is likely that a consumer might either

not see it at all ***or worse yet be even more keenly confused*** when the disclaimer includes the

name BIC on the side") (emphasis added).

> a.   *MoMaCha does not dispute that the MoMA and MoMaCha word marks are identical.*

MoMaCha faults MoMA for analyzing only similarities between MoMA's Marks "and

the marks MOMACHA previously used."  (Opp. at 7.)  Any such limitation in MoMA's

analysis, however, is due to the fact that MoMaCha changed its marks ***after*** MoMA filed its

motion for preliminary injunction.  Further, MoMaCha is wrong when it describes the marks

addressed by MoMA as marks that "MoMaCha previously used" (*id.*) because MoMaCha has

***not*** changed its name or use of the "MOMACHA" word marks.  MoMaCha's unchanged word

marks are not merely similar to MoMA's, they are ***identical***: MoMaCha applied to register the

**"MOMA"** word mark, as well as the "MOMACHA" word mark which wholly incorporates the

"MOMA" mark.  (Mot. at 11.)  MoMaCha even admits that the "CHA" element of the "MOMACHA" mark is descriptive.[2]  (Opp. at 15.)  Thus, the only difference between the MoMA mark and the MOMACHA mark is the addition of a descriptive element, which is legally insufficient to distinguish MOMACHA from MoMA.  *See Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc.*, 253 F.2d 431, 432 (C.C.P.A. 1958).

Moreover, the alleged changes to MoMaCha's logo are insubstantial.  MoMaCha still shows each syllable on a separate line, emphasizing the separation of each syllable just as it did previously through capitalization.  (Opp. at 7.)  This treatment still highlights the addition of the descriptive element CHA to MOMA.  MoMaCha has no plausible claim that the Infringing MOMACHA Marks are not confusingly similar to the MoMA Marks.  The fact that MoMA's Marks are displayed on the front of the Museum, whereas MoMaCha's Marks are displayed on the door of its "520-square-foot café"[3] in no way negates the similarity of the marks.

The case relied upon by MoMaCha regarding use of the marks in the marketplace actually supports MoMA's position.  (*Id.* at 7-8.)  In *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996), the defendant argued that the parties' logos were dissimilar, but the court, in looking at the use of the marks in the marketplace, reasoned that "TSA's mark stretches beyond the logo to the words."  89 F.3d at 962.  The court noted that, when pronounced aloud—such as on the radio or over the phone—the marks were identical. Because the court concluded that the marks were similar in the context in which they were

---

[2] MoMaCha's founder concedes that "CHA" is merely descriptive, stating that MoMA does not "own the word 'cha,' it means tea."  (Levitt Reply Decl. ¶ 4, Ex. B.)

[3] MoMaCha appears to suggest that its small café cannot possibly be confused with MoMA merely because of its square footage.  Not only is this argument nonsensical, it ignores the fact that MoMaCha intends to open several more cafés in the next year in New York City. (ECF No. 9-14.)

generally presented, this factor of similarity favored the plaintiff. *Id*. at 963. The same is true here.

Thus, comparing the MoMA Marks to the Infringing MoMaCha Marks, both before and after changes to the MoMaCha Logo, any alleged differences or disclaimers are insufficient to dispel confusion. *New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 336 (S.D.N.Y. 2010).

> b.    *MoMaCha ignores the evidence that the services are closely related.*

MoMaCha entirely ignores the fact that MoMA has offered restaurant and café services under the MoMA Marks since as early as 1993. (Mot. at 5.) These café services include the preparation of beverages. These services are ***identical*** to MoMaCha's café services. There is, therefore, no gap to bridge between MoMA's services and MoMaCha's services. *See, e.g.*, *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009), *aff'd*, 736 F.3d 198 (2d Cir. 2013). The same is true for the display of modern art. Finally, both parties offer closely related retail services. Whether the art offered for sale is original or reproductions does not negate a likelihood of confusion. Moreover, MoMaCha does not only sell original works of art. It also promotes its MOMACHA mark in connection with retail services such as the sale of novelty art-related products such as blankets and towels, (ECF No. 9-12), which are encompassed by MoMA's registrations for retail services. (ECF No. 10 ¶¶ 3-4.)

> c.    *MoMaCha's analysis of the strength of MoMA's marks is flawed, and MoMA's marks are strong.*

MoMaCha incorrectly asserts that MoMA is descriptive for museum services because it is an acronym for The Museum of Modern Art. (Opp. at 3.) This argument ignores the fact that MoMA is a well-known mark on its own, and, because it is incontestable, it cannot be challenged as descriptive. *See* 15 U.S.C. §§ 1064, 1065. Further, even if MoMA were descriptive of

museum services, it is not descriptive of restaurant or café services, which MoMaCha concedes. (Opp. at 1, 4.)

And MoMaCha's citation of two examples of uses of MOMA in connection with shoes and wine is misplaced[4] because neither weakens MoMA's well-known marks for museum services and related goods and services.  It is well settled that the "'owner of a mark is not required to police every conceivably related use thereby needlessly reducing non-competing commercial activity and encouraging litigation in order to protect a definable area of primary importance.'"  *V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc.*, No. 05CIV4429 RMB/RLE, 2005 WL 3272828, at *4 (S.D.N.Y. Nov. 28, 2005) (citing *Playboy Enter., Inc. v. Chuckleberry Pub., Inc.*, 486 F. Supp. 414, 422-23 (S.D.N.Y. 1980)).  Rather, the focus must be on "'areas of direct competition.'"  *Id.* (citing *Playboy Enter.*, 486 F. Supp. at 422-23).  Thus, the presence of unrelated, non-competing goods such as shoes and wine does not weaken its MoMA Marks.

The two museum-related examples MoMaCha offers likewise do not weaken MoMA's Marks.  The example of MOCA is irrelevant because it is a different mark.  SFMOMA is also a different mark.  Furthermore, SFMOMA is located across the country from MoMA, not in the same city, like MoMaCha.  And, like MoMA, SFMOMA is independently recognized as a

---

[4] MoMaCha's evidence regarding Moma LLC and use of the mark for shoes is unclear, at best.  MoMaCha states that Moma LLC uses MOMA "in black and a commonplace font," but the image of the webpage is from a third-party retail site and therefore does not show how Moma LLC uses the mark.  (Opp. at 5; ECF No. 20 ¶ 5.)  As used by the third-party retailer, MOMA appears merely in the product title underneath the thumbnail image on the results page.  This is not necessarily how the shoe manufacturer uses the mark.  In fact, the inside of the shoe in the middle shows MOMA in a stylized logo in gold.  Further, Mr. Spuches incorrectly states that Moma LLC "had registered the name 'MOMA' as a trademark to sell leather products."  (ECF No. 20 ¶ 5.)  That application was just filed on March 30, 2018 and has not even been examined.  (Levitt Reply Decl. ¶ 7, Ex. E.)  Finally, MoMaCha offers no evidence that the mark shown in the application is actually in use.

world-famous institution.  People who see or hear SFMOMA know that it refers to the museum

in San Francisco, just as people who see or hear MoMA know it is the Museum in New York.

Whether there is a likelihood that people will think SFMOMA located in San Francisco is

affiliated with MoMA in New York presents a very different question than that presented here:

whether there is a likelihood of confusion between an art gallery café in the same city as MoMA.

Thus, the existence of SFMOMA has no bearing on the issue presented here

       Moreover, it is significant that the USPTO has determined there is a likelihood of

confusion between SFMOMA and the well-known MoMA Marks, and has **_rejected_** the San

Francisco Museum of Modern Art's efforts to register both its SFMOMA word and logo marks.

(Levitt Reply Decl. ¶¶ 5-6, Exs. C, D.)  The MoMA Marks are extremely strong, as even the

USPTO recognized in refusing registration of the SFMOMA marks.

       Finally, MoMaCha's cited cases do not support its position.  In _Katz v. Modiri_, 283 F.

Supp. 2d 883 (S.D.N.Y. 2003), despite the defendant's long list of third-party marks containing

an identical element to the plaintiffs' mark for related goods, the court found the strength of the

mark factor still favored the plaintiffs because the defendants did "not provide evidence that the

above-listed marks are currently in use or are sold in conjunction with spa services."  _Id_. at 894.

"[W]ithout further evidence that the aforementioned marks compete either in quality, price, or

location with [plaintiffs' mark] . . . the Court cannot conclude that the mark has been

weakened."[5]  _Id_. (internal quotations and citation omitted).  The same is true here.

                  d.      _MoMaCha does not dispute that actual confusion between the_
                       _parties' marks has occurred._

---

[5] _Trustees of Columbia University v. Columbia/HCA Healthcare Corp._, 964 F. Supp. 733, 745 (S.D.N.Y. 1997), is equally inapplicable because the third-party marks incorporating the plaintiff's mark in that case were for identical services.

MoMaCha claims that MoMA's evidence of confusion is irrelevant because none of the confused individuals identified in MoMA's opening papers were consumers of MoMaCha. MoMaCha is wrong.  MoMA submitted evidence that consumers *of MoMaCha* and social media followers *of MoMaCha* are confused and believe beverages from MoMaCha to have originated with MoMA.  (ECF Nos. 10-11, 10-12.)  And such confusion is likely to continue to occur because, as discussed above, *supra* Section I.A.3, MoMaCha's alleged changes to the presentation of its marks are insufficient to negate a likelihood of confusion.  In fact, MoMaCha consumers have continued to be confused *even after* the alleged changes by MoMaCha.  A patron of MoMaCha posted on Yelp *just days ago* that she "thought it was affiliated with the moma."  (Levitt Reply Decl. ¶ 8, Ex. F.)

And despite MoMaCha's mistaken belief to the contrary, survey evidence is *not* required for a preliminary injunction, particularly where MoMA has shown examples of actual confusion. MoMA's examples of confused consumers, coupled with other examples of confusion, "provide sufficient evidence at this early stage of the case for the Court to conclude that 'prospective purchasers' are likely confused by the marks at issue."  *Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012).  This is particularly true as MoMaCha launched so recently and it has announced its intention to expand with several more cafés this year.  *Id*. at 562-63 (reasoning that where the defendant intended to expand with a new app, "further examples of confusion are likely to abound," and granting plaintiff's motion for preliminary injunction).  Evidence of confusion via a survey is not required when confusion *already abounds*.

        e.     *MoMaCha adopted the MOMACHA Infringing Marks in bad faith.*

MoMaCha was well aware of MoMA's trademark rights before it adopted the MoMaCha

Marks as it sought advice of counsel specifically with respect to MoMA's trademark rights.[6]
(Opp. at 15.)  In fact, its founder admitted that the MOMA portion of its name refers to MoMA
when he concedes that it stands for "art" and that MoMaCha "mashes art and matcha."  (ECF
No. 9-16.)  MoMaCha does not dispute this.  Moreover, the 22 changes to the presentation of its
mark, including its alleged disclaimers, that MoMaCha claims to have made, illustrate that
MoMaCha has known all along that it is wrongfully infringing the MoMA marks.  *Vox
Amplification, Ltd. v. Meussdorffer*, CV 13-4922 (ADS) (GRB), 2014 U.S. Dist. LEXIS 21577,
at *36 (E.D.N.Y. Feb. 11, 2014) (court found disclaimer to be evidence that defendant was aware
of plaintiff's trademark rights).  And Defendants' impressive number of alleged changes does not
tell the story because the changes themselves do not "drastically change[]" the way the
MOMACHA marks are presented, as claimed by MoMaCha (Opp. at 14), and were not enough
to prevent actual confusion.  A "drastic" change would be for Defendants to select a mark that
does not have MOMA in it.  They have not done that.

> f.    *MoMaCha ignores facts in claiming that the relevant consumers
>       are sophisticated.*

MoMA's guests are museum-goers—the general public, families, and children—
including those that live in New York and tourists.  (Mot. at 1.)  As for MoMaCha, it is an
ordinary coffee shop.  (Opp. at 15.)  "We're a matcha cafe with a creative side, just like many
coffee shops."  (Levitt Reply Decl. ¶ 4, Ex. B.)  Furthermore, even if its beverages are
"customized gourmet beverages using the finest ingredients" (Opp. at 16), a beverage is still just
a beverage—and a relatively inexpensive purchase.  MoMaCha's strained argument that its

---

[6] Although MoMaCha provides no details regarding the search parameters it used, its
search was clearly flawed because, by MoMaCha's own admission, it only covered other
"registered trademarks" (Opp. at 15), not common law marks.

customers are actually "serious art buyers" (Opp. at 17) is contrary to these facts.  Moreover,

while some who visit the Museum *may* be professional artists and while some of MoMaCha's

customers *may* purchase an original piece of artwork, courts must consider the probability of

confusion on the part of "both discriminating and casual, relatively unknowledgeable buyers."

*Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

MoMaCha does not deny that the majority of Museum visitors, patrons of MoMA's Design

Stores, and guests at the MoMaCha café are "casual, relatively unknowledgeable buyers";

instead, it simply ignores this inconvenient fact.

### B.   MoMaCha's Failure to Rebut Evidence of Actual Confusion and Bad Faith Adoption of Identical Marks Concedes MoMA's Unfair Competition Claim.

MoMaCha's failure to rebut the overwhelming evidence of confused patrons and artists,

along with its refusal to address its own knowing and intentional adoption of marks identical to

MoMA's, leaves untouched MoMA's showing that it is likely to succeed on its unfair

competition claim.  As noted above, MoMaCha customers have been and are *still* confused about

the source of MoMaCha goods and services, assuming there is an affiliation with MoMA where

there is none.  (*See supra*, Section I.A.3.d.)  Worse still, MoMaCha's attempt to show its good

faith is belied by its own admissions and utterly fails to refute the overwhelming evidence of its

***bad faith***.  For instance, while MoMaCha alleges reliance on the advice of counsel regarding

continued use of its name "MOMACHA,"[7] its failure to address MoMaCha's application to

register the ***identical*** word mark "MOMA" (*See* Opp. at 15; Mot. at 16) is a glaring omission in

its opposition.  Further, while MoMaCha suggests an alternate explanation for the derivation of

---

[7] Defendants repeatedly and erroneously allege that "MOMACHA" is a registered
trademark.  (*See* Opp. at 15 (citing ECF No. 19 ¶¶ 3-4 and ECF No. 20 ¶ 7).)  This is false.
Defendants' U.S. Application Serial No. 87/689,255 for "MOMACHA" has been opposed by
MoMA and is ***not*** registered.  (ECF No. 10 ¶¶ 9-10, Exs. G, H.)

its name, it does not deny knowledge of the MoMA Marks, or their influence on the design of the

MOMACHA Infringing Marks and signage.  (*See* Opp. at 15; Mot. at 17.)  As noted above,

MoMaCha also conspicuously fails to address the undeniable visual similarities between the

marks, *supra* Section I.A.3.a, which is alone evidence of bad faith.  *See Metlife, Inc. v. Metro.*

*Nat'l Bank*, 388 F. Supp. 2d 223, 234 (S.D.N.Y. 2005).  Thus, based on the unrefuted record,

MoMA will succeed on its unfair competition claim.

### C.   MoMA Has Established the Fame of Its Marks and MoMaCha Does Not Dispute the Remaining Elements of MoMA's Trademark Dilution Claim.

While MoMaCha carefully lays out the elements necessary to establish trademark

dilution, it largely fails to address them.  (Opp. at 17-18.)  Instead, MoMaCha only disputes,

without support, whether the MoMA marks are famous.  (*Id*. at 18.)  But Defendants' assertions

ignore the volumes of evidence submitted by MoMA regarding each of the factors enumerated

by 15 U.S.C. § 1125(c)(2)(A) to determine the fame of a trademark, including:

- The nearly 50-year duration and extent of MoMA's publicity; the widespread display of the MoMA Marks on signage, collateral, social media, merchandise, and other amenities; and the extensive geographic reach of MoMA's promotion across the U.S. in print media and online.  (Mot. at 3-5; ECF No. 9 ¶¶ 11-16.)

- The volume and extent of services offered under the MoMA Marks, like its world class art collection of approximately 200,000 works of art; its 2,500 published titles; its vast range of related educational programs and activities; its affiliation with the MoMA PS1 art center; the over 14 million visitors to the Museum since 2014 and 13 million visitors to its website this year alone; the award-winning restaurant and numerous cafés within the Museum; and the retail stores operating in the U.S. and abroad carrying MoMA products.  (Mot. at 3; ECF No. 9 ¶¶ 5-10, 18-20.)

- The actual recognition garnered by the MoMA Marks with the press coverage of its iconic logo; its world-class reputation; and its fame among the U.S. population. (Mot. at 4; ECF No. 9 ¶¶ 13, 17.)

- The numerous trademark registrations and applications owned by MoMA covering the MoMA Marks.  (Mot. at 4; ECF No. 10 ¶¶ 3-8.)

Because Defendants failed to rebut the evidence demonstrating the fame of the MoMA

marks, and further failed to dispute any of the remaining elements shown by MoMA to establish

trademark dilution (Mot. at 21-22), MoMA's success on this claim is undeniable.

## II.     MOMACHA FAILS TO REBUT THE IRREPARABLE HARM MOMA WILL SUFFER IF MOMACHA IS NOT ENJOINED

MoMaCha wholly ignores the mounting evidence demonstrating MoMA's loss of

goodwill and control of its reputation.  (Opp. at 19-20.)  Not only has MoMA shown the

irreparable harm to its goodwill that will result from continuing confusion among average

consumers of museum and café services, it has also detailed the serious risk it faces of damage to

its reputation in the art world among both artists and their representatives.  (Mot. at 22-24.)  As

noted above, MoMaCha completely fails to dispel the numerous instances of actual confusion

that have already befallen the consumers that frequent MoMaCha.  (*See supra*, Section I.A.3.d.)

MoMaCha similarly fails to dispute the evidence demonstrating likelihood of further confusion.

(*See supra*, Sections I.A.2-I.A.3.)  MoMA's numerous examples of customer confusion, along

with the likelihood of additional confusion and MoMaCha's promise of imminently expanding

its business, "suggests that future confusion—and accompanying prospective loss of goodwill—

is a virtual certainty."  *Bulman*, 882 F. Supp. 2d at 564; *see also Marks Org., Inc. v. Joles*, 784 F.

Supp. 2d 322, 335 (S.D.N.Y. 2011) ("The extreme likelihood of confusion (as well as evidence

of actual confusion) makes it clear that Plaintiff has lost good will because of this confusion.").

Left unrebutted, such a showing is alone sufficient evidence of irreparable harm to MoMA.

MoMaCha also cites a confusingly inapposite case in which a plaintiff's claim of harm

was undermined by its delay in seeking relief against defendant.  (Opp. at 20 (citing *Citibank,*

*N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding no irreparable injury where plaintiff

waited "more than ten weeks after it learned directly of [defendant's] plans, and more than nine

months after it received notice through the press that [defendant] intended to open a Long Island

branch").)  There is no allegation of delay in this case, nor could there be; Plaintiff MoMA sent a letter to Defendant MoMaCha on March 29, 2018, immediately upon learning of its impending business plans, and when MoMaCha proceeded with its launch just weeks later, MoMA brought this action within days.  (Mot. at 25; ECF No. 9 ¶¶ 21, 35.)  Thus, MoMA's showing of irreparable harm is unrefuted.

## III.  MOMACHA HAS NOT SHOWN THAT THE BALANCE OF HARDSHIPS TIPS IN ITS FAVOR

MoMaCha similarly fails to make a showing that the balance of hardships would tip in its favor, if faced with a preliminary injunction.  Defendants are a month-old company who, aside from an unsupported assertion that unidentified and unquantified "goodwill . . .  may be irretrievably lost," point only to the economic burden associated with the changing of its name, associated promotional materials, and social media that would result from a preliminary injunction.  (Opp. at 20.)  But the burden MoMaCha bemoans is defeated by its own admission that "it had always been MoMaCha's intention to change its logo on a seasonal basis," explaining that, regardless of a preliminary injunction requiring a design change, "[c]ool, I'll do that on my own, no problem."  (*See* Levitt Reply Decl. ¶ 4, Ex. B.)  The admitted absence of even economic harm to MoMaCha from a preliminary injunction, compared to the undisputed damage to MoMA's reputation and brand if MoMaCha's infringement is left unchecked, tips the balance of hardship decidedly in MoMA's favor.  (Opp. at 19-20; Mot. at 25.)

## <u>CONCLUSION</u>

For the reasons set forth above and in its Motion, MoMA respectfully requests that the Court preliminarily enjoin Defendants from using, displaying, or promoting the MOMA or MOMACHA marks, and the https://momacha.com/ domain name, during the pendency of this action.

-15-

Dated: May 21, 2018                    MORRISON & FOERSTER LLP

                                       By: __s/ Jamie A. Levitt___

                                       Jamie A. Levitt
                                       250 West 55th Street
                                       New York, New York  10019
                                       Telephone: (212) 468-8000
                                       Facsimile: (212) 468-7900
                                       Email: JLevitt@mofo.com


                                       Jennifer Lee Taylor (*pro hac vice*)
                                       Sabrina A. Larson (*pro hac vice*)
                                       425 Market Street
                                       San Francisco, California  94105
                                       Telephone:  (415) 268-7000
                                       Facsimile:  (415) 268-7522
                                       Email: JTaylor@mofo.com
                                                SLarson@mofo.com


                                       Attorneys for Plaintiff
                                       THE MUSEUM OF MODERN ART